**NOT FOR PUBLICATION**                                                                              **CLOSED**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
YVETTE JACKSON,                             :
                                            :
            Plaintiff,                      :
    v.                                      :    CIVIL ACTION NO. 05-2444 (JAP)
                                            :
COMMISSIONER OF SOCIAL                      :
SECURITY,                                   :    **OPINION**
            Defendant.                      :
_____:


APPEARANCES:

Steven Gaechter, Esq.
58 Main Street
Hackensack, NJ 07601
        Attorney for Plaintiff


Christopher J. Christie, Esq.
United States Attorney
Sixtina Fernandez, Esq.
Special Assistant United States Attorney
Office of the United States Attorney
Social Security Administration
26 Federal Plaza
Room 3904
New York, NY 10278
        Attorneys for Defendant

PISANO, District Judge:

Before the Court is Yvette Jackson's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument, *see* Fed R. Civ. P. 78. The record provides substantial evidence supporting the ALJ's decision that Plaintiff is able to engage in substantial gainful activity and therefore is not disabled. Accordingly, the Court affirms.

**I.    Background**

Plaintiff was born on January 29, 1972. She has an eleventh-grade education. Her past relevant work history is as a home health aid assisting in caring for elderly, disabled and infirm patients. Plaintiff asserts that she became disabled on February 14, 2000 due to injuries to her right ankle sustained in a fall.

**A.    Procedural History**

Plaintiff filed an application for benefits on January 9, 2003, alleging an inability to work since February 14, 2000 due to a severe and disabling medically determinable impairment. The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration. On August 6, 2004, a hearing was held before Administrative Law Judge ("ALJ") Christopher Lee ("Lee"). Jackson personally appeared and gave testimony at the hearing. On August 25, 2004, ALJ Lee issued a written decision denying Jackson's claim. Plaintiff then filed an appeal of the ALJ's decision with the Social Security Appeals Council ("Appeals Council") on October 21, 2004. The Appeals Council denied the appeal in a written

decision dated April 8, 2005, making the ALJ's decision the Commissioner's final decision on the issue of Plaintiff's request for benefits.

**B.      Factual History**

      **1.      Plaintiff's Previous Employment**

According to Plaintiff, her only past relevant work history was as a home health aid assisting in caring for elderly, disabled and infirm patients. As part of her job, Plaintiff was required to lift one hundred pounds or more, including lifting patients themselves, carrying them from their beds to their wheelchairs and then from their wheelchairs to their beds.

      **2.      Plaintiff's Daily Activities**

At Plaintiff's hearing before the ALJ, she testified that she lived with her teenage son and rendered child care to her four-year old nephew. She helped her son with his homework, was able to prepare dinner for him, and remained capable of paying her bills. She testified that she was able to dress and bath herself, although she could not stand in the shower. She indicated that she could do some household chores using a chair with wheels. She lived on the second floor of a two family house and was able to climb the flight of stairs to her home, although in a slow manner. She read books for approximately two to three hours each day for enjoyment. She also spent approximately three hours on the computer each day. She took Naproxen for pain and used a cane to walk. Plaintiff testified that she could not grocery shop and that she only visited with friends on special occasions if someone could pick her up.

      **3.      Plaintiff's Medical History**

The record indicates that Jackson sustained a fractured right ankle when she slipped and fell in February 2000. She was taken to Hackensack University Medical Center, where she was

seen by an orthopedic surgeon. She was told she needed operative stabilization, but requested a second opinion from another orthopedic physician, Dr. Kenneth Levitsky of the Garden State Orthopedic Associates. In March 2000, Dr. Levitsky performed surgery on Jackson's ankle, requiring the insertion of numerous screws in her ankle. On April 4, 2000, Dr. Levitsky indicated that Jackson would be out of work from her occupation as a nurse's aid for approximately four months but was a candidate for desk work. On May 10, 2000, Dr. Levitsky reported that Jackson's x-rays showed satisfactory postoperative appearance of her ankle. He also reported that if light duty work was available, Jackson could return to work on May 8, 2000 and perform sedentary work with transportation. Jackson had the screws removed on June 23, 2000.

  On July 12, 2000, Dr. Levitsky reported that Jackson was neurologically intact and that her x-rays showed satisfactory alignment of the ankle mortis. Dr. Levitsky recommended aggressive physiotherapy and noted that Jackson could return to her regular occupation on July 24, 2000. On August 10, 2000, reported that Jackson walked with a moderate limp and that there was no evidence of infection or instability. He opined that Jackson could continue to work without any restriction. He discharged her from active care and noted that no follow up or repeat x-ray was necessary. Two years later, in 2002, Dr. Levitsky reported that Plaintiff was "unable, by her account" to return to work as a home health aid because she experienced pain with prolong standing. He opined that Jackson could seek office type work and encouraged her to pursue such work. On December 12, 2002, Dr. Levitsky recommended anthroscopic surgery of Jackson's ankle after an MRI showed a defect. Jackson underwent surgery and on January 30, 2003, Dr. Levitsky reported that x-rays showed satisfactory post-operative appearance. Dr.

Levitsky recommended therapy and opined that Jackson could perform sedentary work.

Dr. Modesto Fontanez conducted an independent medical examination on Jackson on December 6, 2001. Dr. Fontanez reported limited ankle motion and synovitis as well as a mild limp.

Dr. Luis Vassallo conducted a consultative orthopedic examination on Jackson in March 2003. Dr. Vassallo reported that Jackson was an obese individual who weighed 318 pounds and was 62 ½ inches tall. He noted that Jackson walked with a noticeable limp favoring the right lower extremity and a cane. Dr. Vassallo diagnosed post-traumatic degenerative arthritis of Jackson's right ankle on the right subtalar joint. He opined that Jackson could use both hands for fine and gross manipulation and should not be standing or walking for long periods.

Finally, Jackson's file was reviewed by Dr. F.J. Miranda, a physician for the state of New Jersey, who completed a disability determination. Dr. Miranda concluded that Jackson could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least two hours in an eight-hour workday with an assistive medical device, sit for about six hours in an eight-hour workday, and had unlimited pushing and/or pulling ability. Dr. Miranda also assessed that Jackson had no manipulative limitations, vision limitations, communicative limitations, or environmental limitations.

## II.  **Standard of Review**

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); § 1383(c)(3) ("The final determination of the Commissioner of Social Security. . . shall be subject to judicial review as provided in section 405(g) . . ."); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). "Substantial

evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Thus, substantial evidence may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

> Some types of evidence will not be "substantial." For example,
>
> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 9723 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988) (internal citation omitted)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d

Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

A.     **The Record Must Provide Objective Medical Evidence**

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*, a claimant is required to provide objective medical evidence in order to prove her disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require."); 42 U.S.C. § 1382c(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections. . . 42 U.S.C. § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a Plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability.") She must provide medical findings that show that she has a medically

7

determinable impairment of such severity that she is unable to engage in any substantial gainful activity. *See id.; see also* 42 U.S.C. § 423(d)(1)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## B.     The Five-Step Analysis for Determining Disability

Social Security Regulations provide a five-step sequential analysis for evaluating whether a disability exists. *See* 20 C.F.R. § 20 C.F.R. §§ 404.1520, 416.920.[1]  For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). Given that a

---

[1] The regulations implementing the standard for obtaining disability insurance benefits, 42 U.S.C. § 401 *et seq.*, and those implementing the standard for supplemental security income, 42 U.S.C. § 1381 *et seq.* are the same in all relevant respects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the Code of Federal Regulations ("Listing of Impairments"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If she cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits her to resume her previous employment. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits. 20 C.F.R. §§ 404.1520(e), 416.920(e). Should the claimant be unable to return to her previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work in the national economy, considering her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The Dictionary of Occupational Titles classifies the different levels of physical exertion, namely, sedentary, light, medium, heavy, and very heavy, that could be associated with

9

a job. *See* 20 C.F.R. §§ 404.1567, 416.967. If the Commissioner cannot satisfy the burden, the claimant shall receive social security benefits. *Yuckert,* 482 U.S. at 146-47 n.5.

### III. The ALJ's Decision

After reviewing the available evidence and considering Plaintiff's testimony, the ALJ concluded that Plaintiff was not disabled. The ALJ made the following findings:

### A. Steps One, Two, and Three

The ALJ determined that Plaintiff met step one of the analysis because she had not engaged in substantial gainful activity since the alleged onset of her disability. Next, the ALJ had to determine whether any of Plaintiff's ailments were "severe." The ALJ found that Plaintiff's right ankle impairment was severe within the meaning of the regulations. The ALJ concluded, however, that Plaintiff's impairment was not severe enough to meet or medically equal any of the impairments documented in the Listing of Impairments. Therefore, Plaintiff was not automatically entitled to disability benefits.

### B. Step Four

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. As indicated above, if the claimant is found to be capable of returning to her previous type of work, then she is not "disabled" and therefore not entitled to disability benefits. A comparison between the claimant's residual functional capacity and the requirements of her past relevant work is necessary to satisfy step four. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Burnett v. Comm'r of Social Security Administration*, 220 F.3d 112, 120 (3d Cir. 2000).

The ALJ determined that based on the evidence contained in the record, Plaintiff retained the residual functional capacity to perform work at the sedentary level. In making this determination, the ALJ noted that although Jackson continued to experience residuals relative to her ankle fracture that precluded prolonged standing and walking, she regained the ability to engage in these activities for the shorter periods of time inherent in sedentary work within one year from the alleged onset. The ALJ explained that no positive findings showed that Jackson was unable to perform the prolonged sitting or light lifting required by sedentary work. He explained that his finding that Jackson retained the residual functional capacity for sedentary work was consistent with the assessment from Dr. Miranda and the reports from Dr. Levitsky and Dr. Vassallo.

Given this residual functional capacity, the ALJ concluded that Plaintiff was unable to return to her previous work as a home health aid. He stated that Plaintiff could not return to her previous job because it required extended periods of walking and the ability lift heavy objects. Plaintiff does not object to the ALJ's ultimate finding at this step that Plaintiff cannot return to her previous employment; however, she objects to the ALJ's determination of her residual functional capacity.

**C.** **Step Five**

After taking into consideration Plaintiff's age, education, past work and residual functional capacity for sedentary work within 12 months from the alleged onset date, the ALJ determined that Plaintiff could perform other occupations in the national economy and thus, was not disabled. The ALJ applied Medical-Vocational Rule 201.24 in making this determination.

**IV.** **Legal Discussion**

11

Plaintiff asserts several arguments in favor of reversing the Commissioner's determination.  First, Plaintiff argues that the Commissioner erred in Step Three of the sequential analysis in determining that Jackson's impairment did not equal or meet one of the listed impairments.  Second, Plaintiff argues that the ALJ's conclusion that Jackson could perform a full range of sedentary work is not based upon evidence.  Third, Plaintiff argues that the ALJ failed to consider the effect of Jackson's obesity in accordance with the Commissioner's own regulation and rulings.  Fourth, Plaintiff argues that the ALJ improperly rejected Jackson's complaints of pain and did not follow the Commissioner's own regulations concerning the proper evaluation of pain. The Commissioner opposes, contending that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.  The Court will address each argument in turn.

A. **Step Three : Whether Jackson's Impairment Matches or is Equivalent to a Listed Impairment**

In Step Three, the ALJ must determine whether Jackson's impairment matches, or is equivalent to, one of the listed impairments.  *Burnett v. Commissioner of Social Security Administration*, F.3d 112, 120 (3d Cir. 2000).  Jackson asserts that the ALJ erred in this step of the analysis because the ALJ concluded that Jackson's impairment did not match or equal a listed impairment without citing any evidence or listing category.

The Court rejects Plaintiff's argument that the ALJ erred in Step Three in the analysis. Although it is true that the ALJ did not cite the applicable listing in this matter, the Court finds that the ALJ conducted a proper analysis in determining that Jackson did not meet the criteria for any listed impairment and it was unnecessary for the ALJ to specifically cite Section 1.02, the

applicable listing.  This case is similar to *Rembert v. Comm'r of Soc. Sec.*, No. 04-4063, 2005 U.S. App. LEXIS 14689 at *4 (3d Cir. July 20, 2005), where the court found that the ALJ's failure to explicitly compare an impairment to a listing did not constitute reversible error.  In *Rembert*, the court explained that the ALJ's opinion was sufficient because after finding that the plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment, the ALJ reviewed, analyzed, and relied on the medical evidence and the plaintiff's testimony to support his conclusion that the plaintiff's impairments did not meet any of the listed impairments. *Id*.  Likewise, here, the ALJ sufficiently analyzed whether Jackson met the criteria for a listed impairment at Step Three.

**B.** **Residual Functional Capacity Determination**

The Court rejects Plaintiff's argument that substantial evidence in this case does not support the ALJ's conclusion that Plaintiff was capable of a full range of sedentary work.  On the contrary, the ALJ's residual functional capacity assessment is supported by the medical records of Jackson's treating and examining physicians.  Dr. Levitsky, Jackson's treating physician, opined multiple times that Jackson could perform sedentary work and on one occasion even opined that Jackson could perform her past work without any restrictions.  Additionally, Dr. Vasallo reported that Jackson could use both of her hands for fine and gross manipulation and only assessed that Jackson cannot be standing or walking for long periods.  Contrary to Plaintiff's assertion, the ALJ's conclusion that Jackson can perform sedentary work is consistent with Dr. Vasallo's opinion.  Dr. Vasallo opined that Jackson should avoid standing or walking for long periods.  Plaintiff provides no evidence that Dr. Vasallo, or any other treating or examining physician, opined that Plaintiff cannot stand or walk for up to two hours out of an eight hour

work day, which might be required by sedentary work. Additionally, Dr. Miranda, the state agency review physician, assessed that Jackson could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least two hours in an eight-hour workday with an assistive medical device, sit for about six hours in an eight-hour workday, and has unlimited pushing and/or pulling ability.

The ALJ appropriately considered the reports of Dr. Levitsky, Dr. Vasallo, and Dr. Miranda and did not err in concluding that Jackson remained capable of performing a full range of sedentary work.

C.      **Consideration of Plaintiff's Obesity**

Jackson argues that the ALJ committed reversible error by not considering her obesity in accordance with the Commissioner's ruling that obesity be considered as a factor in the sequential evaluation process. The Court disagrees. First, the Court notes that the ALJ cited to the report of Dr. Vasallo and stated that Dr. Vasallo found Jackson to be an obese individual. Additionally, the ALJ reviewed the medical reports from Jackson's physicians who had noted her obesity in their reports. The Court finds that this is sufficient consideration of Plaintiff's obesity. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that because the plaintiff's doctors were aware of her obesity, "the ALJ's adoption of their conclusions constituted a satisfactory if indirect consideration of that condition."). Because none of Jackson's treating or examining physicians suggested that Jackson's obesity imposed restrictions on her ability to perform sedentary work, the Court is satisfied that the ALJ did not commit reversible error.

**D.**     **Plaintiff's Subjective Complaints of Pain**

The ALJ is entitled to evaluate the credibility of Plaintiff's complaints and to reject such subjective complaints if they are in conflict with the objective medical evidence. Jackson argues that the ALJ improperly rejected her complaints of pain. The Court rejects Plaintiff's argument, as the ALJ properly analyzed the medical evidence in the record in assessing Jackson's complaints. Specifically, the ALJ found that Plaintiff's complaints of pain were inconsistent with the objective medical evidence and the opinions of Jackson's treating and examining physicians. Dr. Levitsky, Jackson's treating physician, reported that Jackson could return back to work beginning in July 24, 2000. Additionally, by August of 2000, Dr. Levitsky reported that although Jackson complained about difficulty with prolonged walking, she essentially had no restrictions in her ability to function. Similarly, in January 2002, Dr. Fontanez noted that Jackson was only complaining of difficulty with long periods of standing and walking. Finally, although Dr. Vassallo found evidence of a right lower extremity limp and limited ankle motion, he only opined that Jackson should not engage in long periods of standing and walking.

The ALJ also emphasized that Jackson's testimony regarding her continued activity level conflicted with the degree of pain she asserted. Plaintiff had testified that she was able to climb the steps to her second floor apartment, although in a slow manner. She regularly rendered care to her four-year old nephew and remained capable of cooking for her son and helping him with his homework. She also read, watched TV, and surfed the internet for enjoyment and did not suggest that she had any problems focusing on these activities. Thus, the ALJ drew the reasonable conclusion that Plaintiff's alleged pain was less debilitating than she described and that she could perform sedentary work.

15

**V.      Conclusion**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff's request for DIB and SSI and thus, the Commissioner's ultimate decision is affirmed.  An appropriate order accompanies this opinion.

Dated: February 21, 2007

s/ Joel A. Pisano  
JOEL A. PISANO U.S.D.J.
